The next case on the calendar is Amid v. Chase. Good morning, Your Honors. John Balistrieri, along with my colleague Matt Schmidt, here for Farah Amid Plaintiff Appellant. The District Court's order on the motion to dismiss should be reversed in its entirety. Res judicata does not apply here because, as shown in the record, there was not a full and fair litigation on the merits of Ms. Amid's claims initially, where the counsel that she had in the briefs we've called the first federal action essentially agreed to dismiss virtually her entire case without her consent, indeed without her knowledge, such that while there was a motion to dismiss there, the court was able to rely on this stipulation to get rid of virtually all of the claims. Am I understanding the record correctly? Your client never moved to vacate that stipulation or never made a Rule 60B motion in connection with that earlier litigation. Am I right about that? That is correct, Your Honor. By the time that she knew, any time for a motion to reconsider had passed. So there was a notice of appeal that was filed, and over the course of a few months, she spoke with the attorney, Mr. Del Cole, who actually didn't even provide her the initial filings, but never did file a Rule 60B. That is correct, Your Honor. What she ended up doing with other counsel, not our firm, is end up initiating a new action the following year, and that is the action where— But there's a final order of dismissal of the earlier case, and why aren't we bound by that? In essence, you're trying to attack it without having attacked it. Well, what we're saying is that it should not bind future decisions because there was not a full and fair litigation on the merits. I mean, we do have in the record substantial affidavits from Ms. Amid and others regarding what took place in 2011, 2012, and 2013 in this regard. The affidavits, I think, begin in A43 of Ms. Amid and then others where she didn't even know about the stipulation, which was in December of 2012. She didn't know about the motion to dismiss. She didn't know about the order, which came in February of 2013, and it was not even until at least March that she learned of any of this. So for that reason, we say it should not bind Judge Wexler or this court. But in general, a stipulation of discontinuance with prejudice is a basis for res judicata. In general, yes. That's actually not what it was here, Your Honor. It was not a full discontinuance, which I think, again, goes to show how Mr. Del Colo was—his action should not bind Ms. Amid. What they stipulated to discontinue were the Section 1983 claims, leaving only the Section 1985 claim. But as this court knows, you cannot have a 1985 claim without some underlying 1983 claims. You can't conspire unless those other claims exist. This is what Judge Wexler, in his motion to dismiss order in February 2013, indicated. So he didn't even address on a merits basis—in fact, there's been no court that has addressed on a merits basis the claims, the constitutional claims, which he is asserting. Judge Wexler simply dismissed the 1985. There's some discussion of the equal protection claim, quite frankly her weakest claim. But the due process claim that she has, both procedural and substantive, and the takings claim has not been analyzed by any court. But what is our authority in the absence—I mean, as my colleague has pointed out, in the absence of a 60B motion or some attempt to—a successful attempt to demonstrate that the earlier litigation doesn't retain its preclusive effect, what is the authority that would allow us to reopen that litigation here? Well, I'm not asking this court to reopen that litigation. What I'm asking this court is to analyze de novo the pleadings in the operative complaint, which was dismissed in this action, but to not be bound by res judicata in such analysis. Why not? Because there was not a full and fair hearing on the merits there. But that's true of thousands and thousands of cases which were dismissed for reasons not on the merits, but they concluded the matter. Yeah, but I know of no case, Your Honor, like this, meaning in our research we've seen none. We have a lawyer who is presently being sued in Nassau County Supreme Court for malpractice by Ms. Amid, not by us, but I believe she's proceeding pro se there, for two stipulations, and this is in the appendix here, which were entered into in December 2012 without her consent, without even her knowledge. So this court can issue a rule which says that if a lawyer functionally agrees to dismiss a case, because that's what it ended up being, without the client's consent, that such dismissal shall not have res judicata effect. That's what I'm asking this court to do, and thus analyze the pleadings on the merits as it ordinarily would in a decision on abortion to dismiss. But there's no authority for what you've just suggested we should do. No, Your Honor, I don't see any authority that has exactly this fact pattern. I've never seen this before, where a lawyer essentially agreed to dismiss his client's case without, for whatever reason, and it's unclear, without the client's consent and without the client's knowledge. But that should not bind this court. This court can give a rule to the district courts that if you have facts like this, where we're not just talking about so-called law office failure. How long did she know that her case had been terminated before she brought the new case? About a year, Your Honor. So she found out in March of 2013. She brought the action the subsequent year in 2000. When was the dismissal? The dismissal was February 2013. She did not find out until, and this is in the record, until meeting with Mr. Del Cole in March of 2013, already past the motion to reconsider. She didn't go back to the court. She didn't go back to the court and say, wait, that dismissal was without my authority or knowledge. Well, she did end up, there was a state court action that was proceeding at the same time where she ended up making these assertions. So it's not like she just sat on her hands for a year. There was time of going to different lawyers where she did notice. If she did it in state court, she could have done it in federal court. I agree, Your Honor, that maybe she didn't proceed in the best way here. But what I'm saying is that we still have a lawyer who has undermined the client's claims by way of dismissing them. The problem is there's an interest in finality. Agreed. You say you don't know of a case like this, but just imagine you could have lots of cases where clients question whether they authorized their lawyer to voluntarily discontinue. I mean, there's an interest in finality. And so without even an effort on her part to set aside the judgment, how do we really just ignore it? Well, I think she didn't follow Rule 60B, a motion for Rule 60B, but she did engage in efforts. There was – she worked on the appeal, spoke with other lawyers. It frankly took – this is an unsophisticated client who took a little while before she ended up bringing the new action and was working on the state court action at the time. And, Your Honor, I understand that we can have someone just say, I did not authorize. You're almost out of time, but are there some other claims that wouldn't be barred by res judicata that you think survived? No, Your Honor. Well, I should say there are the trial claims that we think there was an abuse of discretion by Judge Wexler with regards to the evidentiary rulings made in limine, which allowed the police officers – What about the April 2014 application for a certificate? Yeah, those are the two. So, yes, there's the 2012 and 2014 incidents. So, at A103, this is paragraph 88 of the complaint, we plead how there is what we say is part of a long pattern going on nearly 10 years where they functionally denied – There was an application for C of O in 2014. April 2, 2014. Was that ever formally ruled on? No. She found out in September 2014 that they probably would not rule on it. I think this Court's decision in Sherman against Town of Chester, 2014, works. Looking at the context here where Judge Stroud makes the catch-22 analogy about keep moving down the finish line, that's moving the finish line or the goal line further. That is what they did with Ms. Amit here. Thank you, Your Honor. Good morning, Your Honors. My name is Mark Ratty. I represent the village appellees, Village of Old Brookville, John Chase, Harvey Marks, Henry Foster, Matt Moe, Thomas Lamb, Sean McKee, and Jeffrey Dove. There are two unrelated aspects to this case. First, there's the land use claims that are based on alleged denials of land use approvals. And then there's the police claims that are based on the plaintiff's encounter with the police in May 2012. The land use claims in this case are based on the exact same allegations that were asserted in the 2011 lawsuit that the plaintiff almost completely voluntarily discontinued, and Judge Wexler actually did address the allegations on the merits. He ruled that some of them were time barred. At the time, they were filed in 2011. And if you look at the first lawsuit, the complaint in the first lawsuit and the complaint in this case, you'll see that it's the same exact allegations except for the police allegations and the April 2014 application. The second amended complaint in this case alleges no facts were- April 2014, that would not be barred by res judicata if there were a claim based on that, right? No. However, the April 14- No meaning yes, meaning that's correct. That's correct, but the April- You have other arguments. I understand that. The April 2014 denial was actually not a denial. It was nothing more than the continuing effects of the prior time bar denial, which was part of the 2011 action. Has there ever been a decision- There was never a decision. In fact- Why does that not amount to a denial because she can't build without a CFO? The reason is because she never made that application to the proper people. She sent a letter to the building inspector and copied the mayor and the village clerk. And in the letter, and this is in the- it's referenced in the complaint. Was she told that she had applied to the wrong person? The letter says, please relieve me, something to the effect of, please relieve me from the requirement to plant all these trees. That's not something that the building inspector can do. She had a response to her letter. Not that I'm aware of. How can there not be a response to her letter saying you've applied to the wrong place? She's correct in saying that it was just ignored? I believe so. There was no denial. Her complaint asking for this certificate of occupancy in that letter was based on the 2009 planning board order that required her to plant trees. The building inspector cannot just vacate a planning board order. I don't know the dimensions of the property. It's a good-sized property. It's required to plant 175 trees. It does seem like an onerous requirement to require a property owner to plant 175 trees. The requirement was to replace the trees caliper for caliper, meaning the trees that she had cut down were large trees. You can't replant large trees, so you have to replant them small, and caliper, I believe, is diameter. So 175 small diameter would amount to however many trees, large trees, maybe 30 or 40 trees it was. But that was a decision that was made in 2009 by the planning board. If she wanted relief from the planning board's decision, she had to either go to the planning board and ask for relief or go to the ZBA and ask for a variance from that order. Just writing a letter saying, hey, can you just give me my CO now, it doesn't restart the clock. If you're denied in 2009, you can't just keep coming back and say, okay, can I have it now, just to restart the statute of limitations. The denial happened in ‑‑ it wasn't even denial in 2009. She was granted conditional approval and just never complied. So there was never a denial. Could you address the admission of the testimony at trial from Officer McKee? Yes. I guess it's Sergeant McKee. Now Sergeant, officer at the time of the incident. His testimony that he was regarding his experience in responding to suicide calls and his knowledge of the mental hygiene law was properly admissible as background. The jury is allowed to know the officer and their experience. The claim in this case is that the plaintiff was improperly transported to the hospital under the mental hygiene law. So his understanding of his obligations under that law were completely relevant. She was also alleging there was a punitive damages claim which alleged that his actions were malicious. So his understanding of the law was necessary to rebut the allegations of malice. There was also just numerous ample evidence to support the defense verdict. There was documents and testimony and plaintiff's own admissions that she had called a suicide hotline. She had called more than one suicide hotline. There was five officers who testified that there was a knife and testified to the chain of custody. It was supported by documentary evidence. There was nothing to the contrary. So even if Sergeant McKee's experience was improperly admitted, there was ample evidence to support the jury's verdict on those claims. Thank you. May it please the court, my name is Daniel Ratner. I represent Glen Cove Hospital and the three medical doctors who were named in the complaint. The dismissal on the pleadings was proper. The main reason is because there was no federal question alleged here in the sense that Glen Cove Hospital could not be deemed a state actor in the manner in which it was alleged. The plaintiff alleged that under the joint action and public function tests, Glen Cove was a state actor, but the mere fact that Glen Cove Hospital is subject to state regulation regarding mental health issues does not establish joint action or close nexus or a public function. The Doe versus Rosenberg case and the Gugin case and the Anderson case are all cited in my brief and they clearly all hold that. The mere fact that the police transported the plaintiff to Glen Cove Hospital does not establish a close nexus under the Gugin case. And finally, the bold accusation of a conspiracy between the police and Glen Cove Hospital does not establish joint action, close nexus, public function. And finally, as a matter of law, this court has already held that involuntary commitment in and of itself does not make a privately owned hospital engage in a public function. Lastly, the negligence claim, the state negligence claim was properly dismissed. It was clearly pleaded as a false imprisonment claim. In fact, it's labeled that way at page 96 of the record. But the pleading also alleges negligence. I mean, if it is a negligence claim, it would not have been time barred. You agree with that? I have to concede that, Your Honor. So, but you're saying it really was a false imprisonment claim. That's the way it was actually pleaded. She was taken against her will, and it's stated that way repeatedly in the complaint at page 115 and page 96 of the record. But at 115, it also asserts negligence. It says that while there was no medical... I mean, the cause of action is headed false imprisonment, but it also alleges... I mean, is it possible to have a claim like this that could be sound both in false imprisonment and in negligence? It is possible, Your Honor, but I would ask the court to take a look at the complaint in its totality, and it's very clear that what Plaintiff was arguing is that she was held against her will. She said that there was a couple of mentions without medical justification, so I suppose that would fall under the category of negligence. But I think if you look at the complaint in its totality, you would see that it's really a false imprisonment claim. Thank you. Good morning again. There was false imprisonment and there was negligence. She's time barred on the false imprisonment, which is certainly a more powerful tort, much more likely to get punitive damages. She's out of the box on that, but not... It's labeled false imprisonment. Yes, I understand, Your Honor. But it alleges a negligence claim and it should be reviewed as such, and as a minimum should be assessed on that basis and not deemed time barred. And to be clear, there doesn't need to be... I know there are some allegations about a virtual conspiracy between the hospital and the police. There doesn't need to be that in order for the doctors to have acted essentially as state actors for there to be a claim. And to be clear, in case I was not clear before, we're certainly saying that that's not time barred, nor the conduct from May of 2012, the actual arrest by the police officers, and as the court, as Your Honor noted, Judge Chin, the April 2014 letter where she never did get a response. And even if this court were to find the previous conduct to not provide a basis for a claim because it is either time barred or res judicata applied, it's certainly relevant in consideration about that attempt in April 2014 to get her certificate of occupancy. We are not coming before the court with a five-line complaint that says she tried to get this, oh, and she didn't hear from them. The complaint does state a plausible claim for constitutional, impermissible constitutional taking, even looking solely at the April 2, 2014 letter because she never did hear a response, but this is consistent with the way that she had been treated for years. And with regards to Mr. Rowdy's argument, there were factual arguments that they're making, and we're simply, even though we've litigated this case for a while, before this court, we're at the pleading stage, at least with regards to that. And that is something that could be developed in discovery. It never happened. But what she is saying is that they prevented her from getting the certificate of occupancy because this very wealthy hamlet who is disclaiming the complaint does not want her there, misused their power to try to get this person out and take over her home. That states a claim for which res judicata does not apply and which, even by admission of counsel, is not time barred. Thank you very much, Your Honors. Thank you both. Thank you all. We will take the matter under submission.